# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

CHARLES R. SOUTHERN,

        Petitioner,

v.                                     Case No. 3:22-cv-808-TJC-SJH

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

        Respondents.

_____

## **ORDER**

## I.    **Status**

Petitioner, an inmate of the Florida penal system, is proceeding pro se on a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus (Doc. 1). Petitioner challenges a state court (Duval County, Florida) judgment of conviction for second-degree murder for which he is serving a life sentence with judicial review after twenty-five years. Respondents filed a Response (Doc. 6) with exhibits (Docs. 6-1 to 6-21; Exs. A to U).[1] Petitioner filed a Reply (Doc. 7). This case is ripe for review.[2]

---

[1] The Court will cite exhibits by document and page number as assigned by the Court's electronic case management system.

[2] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th Cir. 2016) (citing Chavez v. Sec'y Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must

## II.    Governing Legal Principles

### A. Standard Under § 2254

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016) (explaining AEDPA deference), abrogation in part on other grounds recognized by Smith v. Comm'r, Ala. Dep't of Corr., 67 F.4th 1335, 1348 (11th Cir. 2023). "The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. Marshall v. Sec'y Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for the state court's decision to qualify as an adjudication on the merits. Harrington v. Richter, 562 U.S. 86,

_____

consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The Court finds that "further factual development" is unnecessary. Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

100 (2011). When the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 584 U.S. 122, 125-26 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes

3

federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (parallel citations omitted).

## B. Exhaustion and Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners

must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see also Pope v. Rich, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that Boerckel applies to the state collateral review process as well as the direct appeal process.").

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, 513 U.S. at 365-66; O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004) (parallel citations omitted).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default, which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to

> preserve the integrity of legal proceedings within our
> system of federalism. These rules include the doctrine
> of procedural default, under which a federal court will
> not review the merits of claims, including
> constitutional claims, that a state court declined to
> hear because the prisoner failed to abide by a state
> procedural rule. See, e.g., Coleman, 501 U.S. at 747-48;
> Wainwright v. Sykes, 433 U.S. 72, 84-85 (1977). A state
> court's invocation of a procedural rule to deny a
> prisoner's claims precludes federal review of the claims
> if, among other requisites, the state procedural rule is
> a nonfederal ground adequate to support the judgment
> and the rule is firmly established and consistently
> followed. See, e.g., Walker v. Martin, 131 S. Ct. 1120,
> 1127-28 (2011); Beard v. Kindler, 130 S. Ct. 612, 617-
> 18 (2009). The doctrine barring procedurally defaulted
> claims from being heard is not without exceptions. A
> prisoner may obtain federal review of a defaulted claim
> by showing cause for the default and prejudice from a
> violation of federal law. See Coleman, 501 U.S. at 750.

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012) (parallel citations omitted). Thus,

procedural defaults may be excused under certain circumstances.

Notwithstanding that a claim has been procedurally defaulted, a federal court

may still consider the claim if a state habeas petitioner can show either (1) cause

for and actual prejudice from the default or (2) a fundamental miscarriage of

justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). For a petitioner to

establish cause and prejudice,

> the procedural default "must result from some objective
> factor external to the defense that prevented [him] from
> raising the claim and which cannot be fairly
> attributable to his own conduct." McCoy v. Newsome,
> 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting [Murray
> v. Carrier, 477 U.S. 478, 488 (1986)]. Under the

> prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999) (parallel citation omitted).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157 (parallel citation omitted). "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523

U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

### C. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003); <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. <u>Strickland</u>, 466 U.S. at 687.

The two-part <u>Strickland</u> test applies to challenges to the validity of guilty pleas based on ineffective assistance of counsel. <u>Hill v. Lockhart</u>, 474 U.S. 52, 58 (1985). The petitioner must still show that counsel's performance was deficient. <u>See</u> <u>id.</u> at 56-59; <u>Lynch v. Sec'y Fla. Dept. of Corr.</u>, 776 F.3d 1209, 1218 (11th Cir. 2015). To establish prejudice, however, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he

would not have pleaded guilty and would have insisted on going to trial." <u>Hill</u>, 474 U.S. at 59 (footnote omitted); <u>Lynch</u>, 776 F.3d at 1218.

There is no "iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other." <u>Ward v. Hall</u>, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in <u>Strickland</u>, "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

Further, "[t]he question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) (internal quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, 562 U.S. at 105. As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of

reasonable professional assistance.'" <u>Daniel v. Comm'r, Ala. Dep't of Corr.</u>, 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting <u>Strickland</u>, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." <u>Id.</u> (citing <u>Richter</u>, 562 U.S. at 105).

### III.   <u>Procedural History & Factual Background</u>

On February 16, 2010, when he was seventeen years old, Petitioner was arrested and charged by Information with second-degree murder with a firearm for the death of a classmate. Ex. A at 2, 7. A grand jury later returned an Indictment for first-degree murder with a firearm. Ex. B at 2-4. With the assistance of retained counsel, Rhonda Peoples-Waters, Petitioner entered a written plea of guilty and negotiated sentence to second-degree murder in Duval County case number 2010-CF-1745. Ex. C at 2-4. On October 1, 2010, the trial court sentenced Petitioner to a term of life, the minimum mandatory sentence under Florida Statutes section 775.087 (commonly referred to as the "10-20-Life statute") for the use of a firearm during the commission of a felony. Ex. D at 2, 5-6.

After the Supreme Court's 2012 decision in <u>Miller</u>,[3] and the consequent

---

[3] <u>Miller v. Alabama</u>, 567 U.S. 460, 479 (2012) (holding "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders").

changes in Florida's juvenile sentencing legislation, Petitioner sought postconviction relief under Rule 3.850 of the Florida Rules of Criminal Procedure, arguing his sentence was unconstitutional. See State v. Southern, No. 2010-CF-1745 (Fla. 4th Cir. Ct., Mar. 12, 2013).[4] The trial court denied his motion, concluding that Florida's First District Court of Appeal held Miller should not apply retroactively. Id. (Aug. 2, 2013). The First DCA affirmed the trial court's order. Id. (Jan. 7, 2014). The Florida Supreme Court granted review, and in light of its decision in Falcon,[5] quashed the First DCA's opinion, and instructed the First DCA to remand the case to the trial court for resentencing in accordance with Florida's newly enacted juvenile sentencing laws as codified in Florida Statutes sections 775.082, 921.1401, and 921.1402. Ex. E at 4-5.[6]

---

[4] The Court takes judicial notice of Petitioner's state court docket. See Fed. R. Evid. 201(b)(2) (allowing a court to "judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned"); Paez v. Sec'y, Fla. Dep't of Corr., 947 F.3d 649 (11th Cir. 2020) ("State court records of an inmate's postconviction proceedings generally satisfy [the] standard [for judicial notice under Rule 201(b)(2)].").

[5] Falcon v. State, 162 So. 3d 954, 956 (Fla. 2015) (holding Miller applies retroactively).

[6] "[T]he Florida Legislature unanimously enacted legislation in 2014 designed to bring Florida's juvenile sentencing statutes into compliance with the United States Supreme Court's . . . Eighth Amendment juvenile sentencing jurisprudence." Horsley v. State, 160 So. 3d 393, 394, 401 (Fla. 2015).

On December 13, 2017, the trial court entered a consent order for resentencing, which Petitioner and his appointed attorney, Michael Bossen, signed. Ex. I at 24-26. The consent order provided in relevant part:

> The State and the [Petitioner] have agree[d] that [Petitioner] would be re-sentenced . . . to a term of life (non-mandatory) in prison for the offense of second degree murder, without a mandatory life sentence, but with a 25 year minimum mandatory for the use of a firearm during a homicide, [and Petitioner] stipulates to a finding pursuant to Section 775.082(3)(a)(5)(a) Florida Statutes, that he killed, intended to kill, or attempted to kill the victim in this case, thereby entitling him to a review within 25 years of the date of his initial incarceration . . . .

Id. at 25. Petitioner waived his statutory right to present evidence at a resentencing hearing. Id.

The day the consent order was entered, the trial court held a hearing at which it vacated Petitioner's original sentence and imposed a new sentence in accordance with the parties' negotiated disposition and the consent order. Id. at 28-30. Petitioner stated under oath that he agreed to be resentenced "to life in prison with a 25 year minimum mandatory, and . . . a 25 year review pursuant to the statute . . . ." Id. at 32-33. Before the trial court imposed his new sentence, Petitioner orally waived the right to present additional evidence. Id. at 32-33, 35.

The trial court advised Petitioner that, by waiving his right to present evidence, it would be resentencing him in accordance with "the testimony and

evidence that was put on" at his 2010 sentencing hearing and in consideration of the relevant statutory criteria. Id. at 35. Petitioner said he understood and had no questions about that process. Id. He also acknowledged that he and his attorney had conversations about the resentencing, including a discussion regarding the new juvenile sentencing laws, and he advised the trial court that his attorney had "answered all of [his] questions," and he was satisfied with his attorney's services. Id. at 34-36. Based upon Petitioner's oral representations made under oath and the signed consent order, the trial court found Petitioner's "waiver . . . and his agreement to be resentenced to life with the 25 year minimum mandatory and the 25 year review . . . [was] . . . voluntary . . . [and he had] a full understanding of the consequences." Id. at 36. The trial court resentenced Petitioner in accordance with the parties' agreement. Id. A new judgment was entered on December 13, 2017. Ex. G at 2.

The following day, the trial court issued a written order, summarizing relevant evidence presented at Petitioner's "lengthy [2010] sentencing hearing," which the court "vividly remember[ed]." Ex. H at 2-5, 16. The evidence presented at Petitioner's sentencing hearing showed that he and his co-defendant, a fellow classmate, wanted to start committing robberies together, so they planned to murder someone "to know what it felt like" should the need to kill someone arise during a robbery. Id. at 4-5. Not only did Petitioner admit to firing the first shot (of two that "render[ed the victim] nearly unidentifiable"),

but physical evidence connected him to the crime, including blood on his shoes,
surveillance footage, and the firearm he used, which he threw in a marsh after
the murder. Id. at 5, 8-9.

In its order, the trial court made individualized findings on the juvenile
sentencing factors, including that the murder was "calculated and ruthless" and
devasted the victim's family and community. Id. at 8-9. The trial court "fully
and thoughtfully considered the science on adolescent brain development"—
that a 17-year-old's frontal lobe is not fully developed—along with Petitioner's
intellectual ability and childhood trauma, as testified to by a licensed
psychologist, but found Petitioner's actions went "well beyond the immaturity
and impetuosity expected of a juvenile brain." Id. at 10-12. The trial court
explained:

> On the day of the murder, [Petitioner] told another
> student that he and his co-defendant planned to
> murder [the victim] that evening. [Petitioner] fired the
> first shot and left his close friend lying dead on the
> ground, her face blown open and shattered from the
> bullet wounds. After[ward,] . . . [Petitioner] attempted
> to cover-up his involvement by cleaning his vehicle,
> disposing of [the victim's] jacket, and lying to police
> about his involvement. No evidence presented at the
> original sentencing hearing supports a conclusion that
> [Petitioner] was caught up in the moment, or that he
> did not have time to thoroughly think about the
> consequences of his actions. Further, while adolescents
> are more likely to be emotional than their adult
> counterparts, [Petitioner] lacked an emotional

> response to the crime he committed and [the victim's] ultimate death.
>
> ....
>
> This Court finds the premeditated, calculated, and heinous way in which [Petitioner] committed the offense does not reflect the immaturity and impulsivity associated with youth. Premeditation and calculation are not inherent components of murder and [Petitioner] made conscious decisions to incorporate these concepts into the offense.

Id. at 12-13, 14.

The court further noted the psychologist testified that Petitioner had a "nonchalant attitude about life," and the video surveillance showed "[Petitioner] and the co-defendant returning to the school after the murder, walking side-by-side and laughing." Id. at 10, 14. Based on the evidence and in consideration of the relevant statutory criteria, the trial court found "the life sentence agreed upon by the parties . . . [was] proper." Id. at 16. Accordingly, the trial court sentenced Petitioner "to a term of life imprisonment with a twenty-five-year minimum mandatory . . . . [with] a twenty-five-year review of th[e] sentence." Id.

On May 21, 2018, Petitioner filed a pro se motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 ("2018 Rule 3.850 Motion"). Ex. I at 5. The trial court held an evidentiary hearing on the motion on September 17, 2018, at which Petitioner's appointed resentencing counsel (Bossen)

testified. Id. at 113-15. Following the evidentiary hearing, the trial court denied Petitioner's 2018 Rule 3.850 Motion on the merits. Id. at 53-58. Proceeding pro se, Petitioner appealed. Ex. J at 2. The First DCA per curiam affirmed the trial court's order without a written opinion and issued its mandate. Ex. M.

On September 20, 2019, Petitioner filed a successive Rule 3.850 motion in the trial court, seeking to withdraw his guilty plea ("2019 Rule 3.850 Motion"). Ex. N at 5, 8-9. He argued his retained trial counsel (Peoples-Waters) was ineffective for failing to properly advise him "that his plea would automatically result in a minimum mandatory life term pursuant to [Florida Statutes section] 775.087(1)(b)," which "caused [him] to blindly enter into an unknowing and unintelligent plea." Id. at 7, 19. The trial court dismissed the motion as impermissibly successive and cautioned Petitioner not to file further frivolous pro se motions. Id. at 114, 116. The court also dismissed the motion as moot because Petitioner had been resentenced. Id. at 115. On the merits, the court found Petitioner's claim "conclusively refuted by the record." Id. at 116.

Petitioner appealed the denial of his 2019 Rule 3.850 Motion. Ex. O at 2. The First DCA per curiam affirmed the trial court's order without a written opinion and issued its mandate. Ex. Q. Petitioner filed yet another pro se motion for postconviction relief in the trial court, arguing the trial court was without jurisdiction to resentence him without ordering a presentence investigation report ("PSI"). Ex. R at 5-6. The trial court denied his motion, finding the court

"had jurisdiction to sentence [Petitioner] even though it did not order a PSI prior to sentencing [him, a first-time juvenile offender,] pursuant to a negotiated plea." Id. at 41. The trial court again cautioned Petitioner against filing future frivolous pro se motions. Id. at 42. Through counsel, Petitioner appealed. Ex. S at 2. The First DCA per curiam affirmed without a written opinion and issued its mandate. Ex. U.

## IV. <u>Analysis</u>

Petitioner raises four Grounds of ineffective assistance of resentencing counsel, and one Ground of trial court error. Doc. 1 at 4-10, 13.

### A. Ground One

Petitioner argues his resentencing counsel (Bossen) was ineffective for failing to advise him on remand for resentencing that he could have moved to withdraw his guilty plea and proceed to a trial. Id. at 4-5. According to Petitioner, he "was advised to consent to be resentenced to the same prison term he could have received had he been found guilty as charged [of first-degree murder] at trial." Id. at 5. He asserts that had he been "properly advised," he would have opted to withdraw his plea because "the possibility of a jury verdict on any lesser included offense would have mandated the imposition of a Youthful Offender sentence [of] no more than four years in prison coupled with no more than two years probation." Id.

17

Respondents argue Petitioner did not exhaust this Ground because he did not raise this claim in state court. Doc. 6 at 15. Petitioner acknowledges as much in his Petition and Reply, but he invokes the <u>Martinez</u> exception because he was not represented by counsel in his postconviction proceedings. Doc. 1 at 5; Doc. 7 at 1-2. Under <u>Martinez</u>, Petitioner must demonstrate the underlying ineffective-assistance-of-counsel claim "is a substantial one, which is to say that [he] must demonstrate that the claim has some merit." 566 U.S. at 14. <u>See also</u> <u>Lambrix v. Sec'y Fla. Dept. of Corr.</u>, 851 F.3d 1158, 1164 (11th Cir. 2017). Conversely, a claim is "insubstantial" if "it does not have any merit or . . . is wholly without factual support." <u>Martinez</u>, 566 U.S. at 16. Even if Petitioner shows his lack of postconviction counsel caused his procedural default, he cannot show the underlying ineffective-assistance-of-counsel claim is substantial.

Here, following the Supreme Court's decision in <u>Miller</u>, the First DCA remanded Petitioner's case to the trial court for resentencing. Ex. E at 4-5. At the evidentiary hearing on Petitioner's 2018 Rule 3.850 Motion, Bossen testified that he was appointed for the limited purpose of resentencing, in accordance with the mandate. Ex. I at 122-24, 131. He recalled Petitioner asking him about his plea, but it was Bossen's understanding that under a <u>Miller</u> resentencing— which was like "treading new water at that time"—Petitioner was "limited" in his options: either proceed to "a resentencing hearing in front of the Judge or …

18

work[] out a deal with the State." Id. at 121. Bossen testified that he instructed Petitioner, "It was the sentence that was being basically negotiated or decided, not the reentering to the plea." Id. at 130.

Assuming Petitioner, procedurally, could have filed a motion to withdraw his plea after remand, but Bossen failed or refused to do so, Petitioner cannot "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." See Strickland, 466 U.S. at 694. According to Petitioner, had the trial court granted a motion to withdraw his plea and set the case for trial on the state's charge of first-degree murder, "the possibility of a jury verdict on any lesser included offense would have mandated the imposition of a Youthful Offender sentence [of] no more than four years[.]" Doc. 1 at 4-5. The Court disagrees.

First, Petitioner offers no basis upon which a motion to withdraw his plea would have been successful. Florida Rule of Criminal Procedure 3.170 addresses the circumstances under which a criminal defendant may withdraw a plea, but the standard differs when such a motion is made before versus after sentencing. Subsection (f) provides in pertinent part, "The court may in its discretion, and shall on good cause, at any time before a sentence, permit a plea of guilty or no contest to be withdrawn . . . ." Fla. R. Crim. P. 3.170(f). Subsection (l), on the other hand, limits the circumstances in which a plea may be withdrawn after a sentence has been imposed, to the following: a trial court's

lack of subject matter jurisdiction; violation of the plea agreement; an involuntary plea; a sentencing error; or as otherwise provided by law. Fla. R. Crim. P. 3.170(l) (citing Fla. R. App. P. 9.140(b)(2)(A)(ii)(a)-(e)).

Given Petitioner had already been sentenced and was before the trial court for resentencing following remand by the First DCA, it is unclear whether the more liberal standard set forth in Rule 3.170(f), or the more stringent standard set forth in Rule 3.170(l), would have applied. Compare Saffold v. State, 374 So. 3d 836, 838, 840 (Fla. 4th DCA 2023) (holding the defendant was not entitled to move to withdraw his plea "under the more liberal standard of [R]ule 3.170(f) after a reversal and remand for resentencing" because such a practice would "allow[] the defendant the right to have a 'swift change of heart,' knowing what sentence may likely be imposed"), with Scott v. State, 331 So. 3d 297, 300-01 (Fla. 2d DCA 2021) (holding the postconviction court should have considered the defendant's motion to withdraw his plea under Rule 3.170(f) because he filed it after his first sentence was vacated but before he was resentenced). Indeed, the Fourth District Court of Appeal, in Saffold, certified conflict with the Second District's decision in Scott, and the Florida Supreme Court granted review. Saffold v. State, No. 2023-1749, 2024 WL 1714495 (Fla. Apr. 22, 2024) (oral argument held Nov. 6, 2024).

Even under the more liberal standard, a defendant seeking to withdraw his plea must offer some basis upon which to do so:

>        Rule 3.170(f), Florida Rules of Criminal
> Procedure, provides that "the court <u>may, in its
> discretion,</u> and <u>shall upon good cause,</u> at any time
> before a sentence, permit a plea of guilty to be
> withdrawn" (emphasis supplied). The burden is upon a
> defendant to establish good cause under the rule, and
> use of the word "shall" indicates that such a showing
> entitles the defendant to withdraw a plea as a matter
> of right. Use of the word "may," however, suggests that
> the rule also allows, in the discretion of the court,
> withdrawal of the plea in the interest of justice, upon a
> lesser showing than <u>good cause.</u> In any event, this rule
> should be liberally construed in favor of the defendant.
> <u>Adler v. State</u>, 382 So. 2d 1298, 1300 (Fla. 3d DCA
> 1980). The law inclines toward a trial on the merits;
> and where it appears that the interests of justice would
> be served, the defendant should be permitted to
> withdraw his plea. <u>Morton v. State</u>, 317 So. 2d 145, 146
> (Fla. 2d DCA 1975). A defendant should be permitted
> to withdraw a plea "if he files a proper motion and
> proves that the plea was entered under <u>mental
> weakness,</u> mistake, surprise, misapprehension, fear,
> promise, or <u>other circumstances affecting his rights</u>"
> (emphasis supplied). <u>Baker v. State</u>, 408 So. 2d 686, 687
> (Fla. 2d DCA 1982).

<u>Robinson v. State</u>, 761 So. 2d 269, 274 (Fla. 1999) (quoting <u>Yesnes v. State</u>, 440 Fla. 1st DCA 1983) (citations cleaned up)).

Neither in his Petition nor his Reply does Petitioner identify any cause to have withdrawn his plea under the circumstances. For instance, he does not argue he was coerced, unaware of his rights, mentally incompetent, or otherwise unaware or mistaken about the terms or consequences of his plea. <u>See</u> Doc. 1 at 4-5; Doc. 7 at 2-3. Regardless, the record demonstrates Petitioner was represented by retained counsel, who helped him negotiate the plea deal

after conducting discovery, and the plea forms and his plea colloquy

demonstrate he entered his plea voluntarily and knowingly.

Under the plea agreement, which Petitioner and his retained trial counsel

signed, Petitioner agreed as follows, in pertinent part:

> I have negotiated my case and have agreed that I
> shall plea[d] guilty to Second Degree Murder, a lesser
> included offense, and be facing a sentencing range of 40
> years to Life in Florida State Prison. I also understand
> the Court will impose the 25 year minimum mandatory
> pursuant to Section 775.087(2) of Florida Statutes (10-
> 20-Life), and the Court has the discretion to make any
> portion of the sentence a minimum mandatory, up to
> Life in Florida State Prison
>
> . . . . I understand that I can receive any lawful
> sentence ranging from 40 years in Florida State Prison
> with a 25 year minimum mandatory sentence, up to
> Life in Florida State Prison, with Life as a minimum
> mandatory sentence.

Ex. C at 2. Petitioner also signed a separate agreement in which he waived his

rights to sentencing procedures under Florida Statutes section 985.233, "which

provides for special considerations by the Court . . . [for] a juvenile." Id. at 5-8.

He expressly waived his right to a "presentence investigation" and "a hearing

regarding the suitability of adult or juvenile sanctions." Id. at 7.

At the plea hearing, Petitioner's counsel said that she advised Petitioner

she was concerned about the plea agreement because of the sentencing range,

but Petitioner insisted on "accept[ing] responsibility" for his actions. Ex. R at

95. The trial court accepted the factual proffer offered by the State, and the following colloquy took place:

> THE COURT:    Okay. I do find a factual basis. Mr. Southern, your attorney has indicated you wish to enter a plea of guilty to the lesser offense of second degree murder. That is first punishable by life and with the firearm charge does carry a life minimum mandatory.
>
> The negotiated plea here is that you would face at the bottom 40 years with a 25 year minimum mandatory at the bottom up to life, with a life minimum mandatory.
>
> Do you understand that?
>
> [PETITIONER]:  Yes, ma'am.
>
> THE COURT:    Is that what you wish to do here today?
>
> [PETITIONER]:  Yes, ma'am.

Id. at 98-99.

The court reiterated two more times that Petitioner was "facing up to life minimum mandatory," and each time, Petitioner said he understood. Id. at 100, 106. Petitioner further acknowledged that his counsel had reviewed the evidence and discovery with him, including witness depositions and expert reports. Id. at 100-01. Petitioner said he had discussed both the plea agreement and the waiver of his "rights under the juvenile statute" with his attorney, and he acknowledged his signature on both forms. Id. at 102-03.

Petitioner also acknowledged the constitutional rights he was waiving by

entering his plea. Id. at 99-100. He testified that no one had threatened or coerced him into entering his plea, nor had anyone promised him anything in exchange for his plea. Id. at 100. He said he was entering his plea freely, willingly, and voluntarily; was not under the influence of any drugs or alcohol; had not been diagnosed with any mental health issues; and was afforded sufficient opportunity to speak with his family and his attorney about his plea. Id. at 100, 103-04. The trial court accepted Petitioner's plea, finding it was "freely and voluntarily entered with a full understanding of the [con]sequences thereof." Id. at 105.

Not only does Petitioner fail to identify any cause to have withdrawn his guilty plea, but he speculates that a jury may have acquitted him or found him guilty of a lesser-included offense, which "would have mandated the imposition of a Youthful Offender sentence [of] no more than four years." See Doc. 1 at 4.[7] His speculative assertions are insufficient and legally incorrect. Had Petitioner withdrawn his plea and proceeded to a trial, he would have been tried on a charge of first-degree murder. Such a charge is a capital offense, which is not eligible for youthful offender sentencing. Fla. Stat. § 958.04(1)(c) ("[A] person

---

[7] Under Florida's youthful offender statute, unless a person "has been found guilty of a capital or life felony," a trial court may impose a youthful offender sentence to include "a split sentence whereby the youthful offender is to be placed on probation or community control upon completion of any specified period of incarceration; however, if the incarceration period is to be served in a department facility other than a probation and restitution center or community residential facility, such period shall be for not less than 1 year or more than 4 years." Fla. Stat. § 958.04(1), (2)(c).

who has been found guilty of a capital or life felony may not be sentenced as a youthful offender under this act.").

The charge to which Petitioner pled—second-degree murder with a firearm—also was not eligible for a youthful offender sentence because second-degree murder is a first-degree felony punishable by imprisonment for a term of years not exceeding life. Fla. Stat. § 782.04(2). And because Petitioner indisputably used a firearm, the charge was reclassified as a life felony. Fla. Stat. 775.087(1)(a) (providing for enhancement "of a felony of the first degree, to a life felony," if the perpetrator used a firearm, the use of which is not an essential element of the crime).[8] See also State v. Watlington, 305 So. 3d 774, 776 (Fla. 2d DCA 2020) ("[T]he Florida Youthful Offender Act expressly precludes youthful offender sentencing for any 'person who has been found

---

[8] Assuming arguendo Petitioner had been convicted of a crime for which he could have been eligible for youthful offender sentencing, Petitioner's contention that a youthful offender sentence would have been "mandated" is incorrect. The imposition of a youthful offender sentence is discretionary. Fla. Stat. § 958.04(1) ("The court may sentence as a youthful offender any person [who qualifies under the statute]." (emphasis added)). See also Fine v. State, 312 So. 3d 1057, 1062 (Fla. 1st DCA 2021) ("[A] trial court is under no obligation to impose a youthful offender sentence."); Simpkins v. State, 784 So. 2d 1203, 1204 (Fla. 2d DCA 2001) ("The decision whether to sentence a defendant as a youthful offender is discretionary with the trial court."). Based on the record, the trial court likely would not have considered a youthful offender sentence. In its sentencing order, the trial court characterized the murder as "heinous," "calculated," and "ruthless." Ex. H at 8, 14. Additionally, at Petitioner's sentencing hearing, the trial court expressly said his conduct was not attributable to an adolescent response to "an emotionally charged situation," and it was not "immature, rash, [or] impulsive." Id. at 255. Rather, the trial court found Petitioner behaved as an adult, capable of "focused decision making," and described the murder as "planned out, premeditated, [and] cold and calculated." Id.

guilty of a capital or life felony.' § 958.04(1)(c). This prohibition includes felonies that have been enhanced to life felonies under section 775.087(1)(a)."); <u>Postell v. State</u>, 971 So. 2d 986, 989 n.5 (Fla. 5th DCA 2008) ("Section 775.087 mandates the reclassification of a first-degree felony to a life felony when, during the commission of the felony, 'the defendant carries, displays, uses, threatens to use, or attempts to use any weapon or firearm, or during the commission of such felony the defendant commits an aggravated battery,' so long as the use of a weapon or firearm is not an essential element of the felony.").

Based on the state's factual proffer at Petitioner's plea hearing, there was ample evidence to support a murder conviction on a charge that was subject to enhancement for the use of a firearm. At the plea hearing, the prosecutor explained as follows:

> Both [Petitioner and his co-defendant[9]] outlined that they were both armed with handguns. Both of them indicated in their video-taped proffers that [Petitioner] Charles Southern was the one who drove to th[e] location [where they shot the victim].
>
> Charles Southern and [his co-defendant] had previously discussed what they were going to do before they arrived at that location, and that [sic] Charles Souther[n] was, in fact, the person who was the first to shoot and ambush [the victim] when he fired and shot her in the head sending her to the ground.

---

[9] Petitioner's co-defendant pled first.

> . . . . [Petitioner], in his proffer, . . . [said] that
> part of the reason why they stole the guns is they
> intended to commit robberies and that this killing was
> in preparation so that they would know what it felt like
> and what they needed to do when they actually pulled
> the trigger during the course of a robbery attempt.

Ex. R. at 97-98.

The trial court's sentencing order (on resentencing after remand) provides

more facts describing the "premeditated, calculated, and heinous way in which

[Petitioner] committed the offense":

> [The day the victim's parents reported her
> missing,] a bicyclist found what was believed to be [the
> victim's] body a short distance from [University
> Christian School]. Upon arrival, law enforcement
> located the body of a girl, wearing a University
> Christian polo shirt and black slacks, along a muddy
> back road near a ditch. As Detective Bowers stated
> during his testimony at the original sentencing
> hearing, law enforcement found [the victim] with bullet
> wounds to the head, describing the bullet wounds as
> being of such a magnitude that they "actually exploded
> the face." . . . .

> The medical examiner reconstructed [the
> victim's] face to recreate the trajectory of both bullet
> wounds. An autopsy revealed that the first shot struck
> the left cheek and went through the upper jaw down
> toward [the victim's] neck. . . . .

> Evidence technicians worked through the night,
> created casts of tire tracks in the mud, and ultimately
> determined that the tracks went to and from the
> location of [the victim's] body. Based upon the casts,
> law enforcement determined it was a truck or SUV.
> Law enforcement canvassed the school parking lot
> looking for a truck or SUV, and came across

[Petitioner's] truck. The tread on his truck looked like
the casts taken by the evidence technicians. Law
enforcement noticed the truck had recently been
cleaned, absent the fresh mud underneath a mirror and
underneath the muffler.

Law enforcement met with school security and
reviewed video surveillance of the campus from the day
of [the victim's] murder. Video surveillance showed
that at 3:15 p.m., the co-defendant walked towards the
front of the school with [the victim]. Shortly thereafter,
the co-defendant returned to the school with
[Petitioner], and both individuals can be seen laughing
on the surveillance footage.

Law enforcement interviewed [Petitioner], after
seeing his vehicle in the parking lot during the canvass,
and found his mannerisms and behavior suspicious.
Law enforcement conducted a second interview with
[Petitioner], during which he disavowed any knowledge
or participation in [the victim's] murder. Instead,
[Petitioner] stated that he got in his truck, drove
around Jay Ray Circle on the school's campus, and
lifted weights with the co-defendant on the day in
question. When confronted with a significant time
lapse in surveillance footage of [Petitioner] and co-
defendant getting in the truck and appearing on Jay
Ray Circle, [Petitioner] could offer no explanation. Law
enforcement went to [Petitioner's] home to complete a
search and retrieved the boots [Petitioner] was wearing
in the security footage from the day of the murder.
Using an alternative light source on the boots, which is
used to detect human blood, law enforcement found
indications of a substance that reflected on the boots.
[Petitioner] later admitted that he hid the firearm he
used to commit the instant offense in a vent in his home
at the time law enforcement searched his home.

After learning that his co-defendant was
speaking to law enforcement, [Petitioner] contacted
Detective Bowers and stated that he watched the co-

defendant kill [the victim]. During a subsequent interview, however, [Petitioner] ultimately admitted to firing the first shot at [the victim's] face. [Petitioner] stated he had his gun out and he was playing with it, explaining he was trying to "scare the shit out of [the victim]." When asked if he scared her, [Petitioner] laughed and said he did, but stated that he did not mean to shoot [her].

. . . . Prior to the murders [sic], [Petitioner] and his co-defendant stole firearms from a friend's house; [Petitioner] served as a lookout during the theft. Law enforcement learned [Petitioner] was the first to bring a firearm to school. On the day of the murder, [the victim] asked the co-defendant, a close friend, if she could spend time with him after school. Unbeknownst to [the victim], both [Petitioner] and the co-defendant previously agreed that this was the day they would murder someone, and they chose their close friend . . . to be their target. Notably, [Petitioner] disclosed to another student his plans on the day of the murder. [Petitioner] told the fellow student that he made plans to murder [the victim] with the co-defendant during lunch.

Following the murder, [Petitioner] took steps to cover his involvement in the crime. [He] took his car to the carwash to have it cleaned and threw [the victim's] jacket in a trashcan to dispose of any evidence that would tie him to the scene of the crime. [He] also drove to the Palm Valley area in Ponte Vedra Beach, Florida, and threw the gun in a marsh. Law enforcement ultimately recovered the firearm in the marsh after [Petitioner] admitted where he threw the weapon. [Petitioner] was seventeen years old at the time of the offense.

Ex. H at 2-5, 14 (internal citations omitted).

Petitioner and his co-defendant both testified at their joint sentencing hearing, and they admitted to having formulated a plan to kill the victim. Id. at 76, 159. In executing their plan, they drove the victim in Petitioner's truck to a park near the school; both had guns with them, which they previously stole from another friend; and, after giving his co-defendant a pre-planned "signal," Petitioner shot the victim in the side of her face when she was not looking. Id. at 76-79, 157-59. Petitioner admitted that he called the victim "an easy victim," and he took the first shot to impress his friend (his co-defendant).[10] Id. at 154, 160. He also admitted to trying to cover up what he had done. Id. at 154-55. The psychologist who testified on Petitioner's behalf stated that Petitioner "did not appear to be in denial that he was culpable" and was "resigned to the fact that he [would] be spending a significant portion of his life in prison." Id. at 93, 94.

Given the evidence the state would have adduced at trial, a jury likely would have convicted him as charged, which would have made him ineligible for youthful offender sentencing. Petitioner's speculative assertion that he potentially could have been acquitted by a jury is insufficient to demonstrate prejudice. "[U]nder Strickland, a defendant cannot, as a matter of law, demonstrate prejudice by relying on the possibility of a jury pardon, which by

---

[10] At the sentencing hearing, the lead detective said that when Petitioner's co-defendant walked the victim out of school and to Petitioner's truck, he "was leading a lamb to slaughter." Ex. H at 197.

definition assumes that the jury would have disregarded the law, the trial court's instructions, and the evidence presented." Sanders v. State, 946 So. 2d 953, 956 (Fla. 2006).

Because Petitioner's ineffective assistance of counsel claim is insubstantial and lacks merit, Petitioner cannot rely on Martinez to excuse the procedural default of this claim. Likewise, Petitioner has failed to demonstrate that failure to consider this claim on the merits will result in a fundamental miscarriage of justice. Ground One is due to be denied.

## B. Ground Two

Petitioner argues his resentencing counsel was ineffective for incorrectly advising him that the only way for him to receive the benefit of the 25-year judicial review of his sentence under Florida's juvenile sentencing legislation was to enter the consent order. Doc. 1 at 6-7. He says he was "affirmatively misled into believing that if he failed to accept the resentencing agreement[,] he would go through the full-blown resentencing hearing and receive a sentence with no possibility of release whatsoever—no parole, no judicial review, no nothing." Id. at 7.

Respondents argue Petitioner did not exhaust this Ground because he did not raise the claim on appeal from the denial of his postconviction motion. Doc. 6 at 19. Petitioner maintains he did exhaust this claim because he raised it in his 2018 Rule 3.850 Motion, Doc. 1 at 8, and he says there is "contradictory

language" in the relevant rules of appellate procedure regarding whether all issues must be briefed, Doc. 7 at 4 (citing <u>Walton v. State</u>, 35 Fla. L. Weekly D856 (Fla. 2d DCA 2010), <u>withdrawn and superseded</u>, 58 So. 3d 887 (Feb. 11, 2011); <u>Norwood v. State</u>, 39 So. 3d 336 (Fla. 2d DCA 2011), <u>withdrawn and superseded</u>, 67 So. 3d 270 (Mem) (Mar. 16, 2011)).

Petitioner received an evidentiary hearing on his 2018 Rule 3.850 Motion. Ex. J at 38-39. As such, he was required to file an appellate brief. Fla. R. App. P. 9.141(b)(3)(C). Under Florida law, when a brief is required, any issue not raised is considered abandoned. <u>Prince v. State</u>, 40 So. 3d 11, 12 (Fla. 4th DCA 2010) (holding the appellant waived issues not raised in his brief on appeal from the denial of a postconviction motion on which he received an evidentiary hearing); <u>Atwater v. Crosby</u>, 451 F.3d 799, 809-10 (11th Cir. 2006) ("Pursuant to state procedural rules, abandonment of an issue results from submission of a brief without argument thereon in an appeal of an order denying relief after an evidentiary hearing." (citing <u>Shere v. State</u>, 742 So. 2d 215, 217 n.6 (Fla. 1999)). <u>See also</u> <u>Cortes v. Gladish</u>, 216 F. App'x 897, 899-900 (11th Cir. 2007) (noting as dicta that if a petitioner "received an evidentiary hearing, his failure to address issues in his appellate brief would constitute a waiver"); <u>Myers v. Sec'y, Fla. Dep't of Corr.</u>, No. 19-14060-A, 2020 WL 6156872, at *1 (11th Cir.

Jan. 29, 2020)[11] (noting the petitioner waived the claims he failed to brief on appeal following the denial of his Rule 3.850 motion in which an evidentiary hearing was held).

In his 2018 Rule 3.850 Motion, Petitioner argued his resentencing counsel was ineffective for telling him the only way he could qualify for a 25-year judicial review of his sentence under the new juvenile sentencing laws was to enter the consent agreement and waive his right to a new sentencing hearing; failing to raise the possibility that he could have been sentenced as a youthful offender; and failing to move for the recusal of the trial judge after she allegedly told counsel before resentencing that "she would impose no sentence less than life, regardless of mitigation for [Petitioner's] crime of Second Degree Murder." Ex. I at 6-7, 10-11. In a written order, the trial court denied Petitioner's 2018 Rule 3.850 Motion on the merits. Id. at 53. Separately, the trial court also denied Petitioner's motion for the appointment of counsel, finding that his pro se filings were well written and "well-thought out." Id. at 48, 118.

On appeal from the denial of his 2018 Rule 3.850 Motion, Petitioner identified two issues, although he primarily argued the trial court erred by not

---

[11] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060-61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

appointing him counsel to represent him in his postconviction proceedings. Ex. J at 3-4, 10-11. He did not seek review of the trial court's ruling on the ineffective-assistance-of-counsel claims he raised in his 2018 Rule 3.850 Motion. See id. Because Petitioner did not appeal the issue he raises in Ground Two of his Petition, he did not "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." See O'Sullivan, 526 U.S. at 845.

Having abandoned the issue on appeal from the denial of his 2018 Rule 3.850 Motion, Petitioner failed to exhaust his state court remedies, resulting in a procedural default of this claim. See Baker v. Dep't of Corr., Sec'y, 634 F. App'x 689, 693 (11th Cir. 2015) (affirming the district court's conclusion that the petitioner's claim "was not exhausted in state court because [he] abandoned it on appeal" in his postconviction proceedings). Petitioner does not demonstrate cause for and prejudice from the procedural default, nor does he demonstrate that a fundamental miscarriage of justice will result if this claim is not addressed on the merits. Because the claim raised in Ground Two is unexhausted, it is due to be denied.

### C. Ground Three

Petitioner argues his resentencing counsel was ineffective for failing to move for the recusal of the trial judge, who allegedly told counsel before resentencing that she would not consider a sentence other than life. Doc. 1 at 8-

9.[12] Respondents argue Petitioner did not exhaust this Ground because, as with Ground Two, he abandoned the claim on appeal from the denial of his 2018 Rule 3.850 Motion. Doc. 6 at 28. Petitioner does not address this Ground in his Reply, see generally Doc. 7, but in his Petition, he claims to have raised this claim on appeal, Doc. 1 at 10.

Contrary to Petitioner's contention in his Petition, he did not raise this claim in his brief on appeal. See Ex. J at 3-4, 10-11. As such, he did not "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." See O'Sullivan, 526 U.S. at 845. Having abandoned the issue on appeal from the denial of his 2018 Rule 3.850 Motion, Petitioner failed to exhaust his state court remedies, resulting in a procedural default of this claim. See Baker, 634 F. App'x at 693. Petitioner does not argue cause for and prejudice from the procedural default, nor does he assert that a fundamental miscarriage of justice will result if this claim is not addressed on the merits. Because the claim raised in Ground Three is unexhausted, it is due to be denied.

**D. Ground Four**

Petitioner argues his resentencing counsel was ineffective for failing to advise him that, in resentencing him, the trial court would "reclassify the

---

[12] At the evidentiary hearing on Petitioner's 2018 Rule 3.850 Motion, Bossen disavowed that the trial judge ever made such a comment to him. Ex. I at 137-38.

degree of the offense" such that a life sentence would be mandatory. Doc. 1 at
10-11. Petitioner explains that he was led to believe he could receive a term of
years as opposed to life but was not told the trial court would "reclassify the
degree of the offense from second degree murder, a felony of the first degree, to
second degree murder with a firearm where death occurred, a life felony." Id. at
11. As in Ground One, Petitioner claims that had he been properly advised, he
"would have moved to withdraw the underlying plea of guilty," or "at the very
least," not waived his right to a full resentencing hearing. Id. at 10.

Respondents argue Petitioner did not exhaust this Ground because he did
not present the claim in state court. Doc. 6 at 32. Petitioner does not address
the exhaustion argument in his Reply, but in his Petition, he claims to have
exhausted this Ground through the filing of his 2019 Rule 3.850 Motion. Doc. 1
at 12. However, in that postconviction motion, Petitioner argued his trial
counsel (Peoples-Waters)—not his resentencing counsel (Bossen)—was
ineffective for "failing to adequately advise [him] that his plea would
automatically result in a minimum mandatory life term pursuant to Fla. Stat.
775.087(1)(b)." Ex. N at 7. He sought to withdraw his plea as involuntary given
his trial counsel's allegedly bad advice, which he claims to have discovered for
the first time at the evidentiary hearing on his 2018 Rule 3.850 Motion following
resentencing. Id. at 8.

Because Petitioner did not raise this claim in state court, he failed to exhaust his state court remedies, resulting in a procedural default of this claim. He does not argue cause for and prejudice from the procedural default, nor does he assert that a fundamental miscarriage of justice will result if this claim is not addressed on the merits. <u>See generally</u> Doc. 7. Because the claim raised in Gound Four is unexhausted, it is due to be denied.

**E. Ground Five**

Petitioner argues the trial court erred because it "acted without jurisdiction by resentencing [him] without ordering, reviewing and considering the statutorily required presentence investigation." Doc. 1 at 13. Respondents contend that Petitioner failed to fairly present the federal nature of this claim in state court, and as such, his claim is unexhausted and procedurally defaulted. Doc. 6 at 36-37.

Petitioner raised this claim in his 2019 Rule 3.850 Motion, arguing the trial court did not comply with "the procedural requirements of [Rule] 3.710(a)"[13] of the Florida Rules of Criminal Procedure. Ex. R at 6-7. He appealed the summary dismissal of his motion, arguing his sentence should be vacated

---

[13] This rule provides in pertinent part, "No sentence or sentences other than probation or the statutorily required mandatory minimum may be imposed on any defendant found guilty of a first felony offense or found guilty of a felony while under the age of 18 years, until after such investigation has first been made and the recommendations of the Department of Corrections received and considered by the sentencing judge." Fla. R. Crim. P. 3.710(a).

because the trial court lacked jurisdiction to resentence him in the absence of a PSI as required by Florida Rule of Criminal Procedure 3.710(a). Ex. S at 3, 8.

To the extent Petitioner urges that the state court erred under Florida law when it resentenced him without a PSI, this claim is not cognizable on federal habeas review. The writ of habeas corpus under 28 U.S.C. § 2254 "was not enacted to enforce State-created rights." Cabberiza v. Moore, 217 F.3d 1329, 1333 (11th Cir. 2000) (citing Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988)). The purpose of a federal habeas proceeding is review of the lawfulness of a petitioner's custody to determine whether that custody is in violation of the Constitution or laws or treaties of the United States. Coleman v. Thompson, 501 U.S. 722 (1991). Only in cases of federal constitutional error will a federal writ of habeas corpus be available. Jones v. Goodwin, 982 F.2d 464, 471 (11th Cir. 1993); Krasnow v. Navarro, 909 F.2d 451, 452 (11th Cir. 1990). It is not the province of this Court to reexamine the state-court determination on an issue of state law. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is 'couched in terms of equal protection and due process.'" Branan, 861 F.2d at 1508 (quoting Willeford v. Estelle, 538 F.2d 1194, 1198 (5th Cir. 1976)).

To the extent Ground Five can liberally be construed as a federal constitutional challenge, this claim is unexhausted because when briefing this

issue on appeal, Petitioner did not state or even suggest that it was a federal claim about due process or equal protection. <u>See</u> Ex. S at 9-13. Instead, Petitioner argued, in terms of state law only, that the trial court was without jurisdiction to resentence him without first obtaining a PSI in accordance with the Florida Rules of Criminal Procedure. <u>See</u> <u>id.</u>

For the reasons stated, the claim raised in Ground Five is not cognizable or is unexhausted and procedurally defaulted, and Petitioner has failed to show cause for or prejudice from this procedural bar. He also has failed to demonstrate a fundamental miscarriage of justice. Thus, Ground Five is due to be denied.

Accordingly, it is

**ORDERED**:

1.    The Petition (Doc. 1) is **DENIED**, and this case is **DISMISSED with prejudice**.

2.    If Petitioner appeals, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[14]

---

[14] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To

3.    The **Clerk** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 16th day of September, 2025.



TIMOTHY J. CORRIGAN
Senior United States District Judge

Jax-6

c:
Charles R. Southern, #J42332
Counsel of Record

---

make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.